*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FIGUEROA, Minor.

UNPUBLISHED
May 18, 2023

No. 362893
Wayne Circuit Court
Family Division
LC No. 2022-000156-NA

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Respondent-father appeals as of right the order of the trial court terminating his parental rights to his minor child, XAF, under MCL 712A.19b(3)(b)(*i*) (parent caused abuse of a sibling of the child and the child will likely suffer injury or abuse if returned to the parent); (j) (likelihood of harm to the child if returned to the parent); (k)(*ii*) (parent abused a child or sibling and the abuse included criminal sexual conduct);[1] and (k)(*ix*) (sexual abuse of child). We reverse and remand for further proceedings.

## I. BACKGROUND

This appeal involves two half-siblings, XAF and IB. XAF and IB have the same mother but different fathers. Respondent-father is XAF's father. He and XAF's mother were in a seven-year relationship, having met when IB was three or four years old. Their relationship ended approximately three years before the allegations at issue arose. During and after respondent-father's relationship with XAF's mother, respondent-father actively participated in XAF's and IB's lives.

---

[1] The trial court's order cites MCL 712A.19b(3)(k)(*i*) (abuse involving abandonment) as a ground for termination. This is a typographical error. The petition to terminate parental rights included as grounds for termination, in relevant part, MCL 712A.19b(3)(k)(*ii*) and (*ix*). The referee explicitly quoted and referenced subsection (k)(*ii*) when making its findings at the conclusion of the hearing. We, therefore, analyze the issue presented under MCL 712A.19b(3)(k)(*ii*).

According to allegations in the petition to terminate respondent-father's parental rights filed by petitioner, the Michigan Department of Health and Human Services (MDHHS), XAF's mother received a phone call from the mothers of two of respondent-father's other children in early January 2022. During the call, one of the mothers indicated that her brother, a friend of respondent-father, discovered a sexually explicit video and nude photo of IB on a cell phone that respondent-father had given to him years earlier. Based on this phone call, XAF's mother asked IB whether respondent-father ever touched her inappropriately. IB disclosed that respondent-father had been sexually abusing her since she was eight years old. XAF's mother took IB to the hospital for medical treatment and testing. IB, 12 years old at the time, tested positive for a sexually transmitted disease (STD). The same day, Child Protective Services (CPS) received a referral alleging that IB had been sexually abused by respondent-father.

CPS referred IB to Kids-TALK Children's Advocacy Center (Kids-TALK) for a forensic interview. During the interview, IB indicated once again that respondent-father began sexually abusing her when she was eight years old. According to the Kids-TALK report, IB disclosed that respondent-father touched her genitals with his fingers, forced her to perform oral sex on him several times, and penetrated her vagina with his penis on numerous occasions. IB also disclosed an occasion when respondent-father took IB, XAF, and the younger brother of respondent-father's girlfriend at the time, to a hotel where he shared a room alone with IB and penetrated her vagina with his penis. IB further indicated that respondent-father penetrated her vagina with his penis in the home that they lived in with XAF and XAF's mother. According to IB, respondent-father last abused her at his home in November 2021.

In mid-February 2022, MDHHS filed a petition requesting that the trial court take jurisdiction of XAF and terminate respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*), (g) (the parent, although financially able to do so, fails to provide proper care or custody for the child), (j), (k)(*ii*), and (k)(*ix*). MDHHS's petition detailed IB's sexual-abuse allegations and respondent-father's three prior contacts with CPS, two of which involved unsubstantiated claims of sexual abuse. It also requested that the court release XAF into his mother's care and custody.

A family court referee held a preliminary hearing where CPS specialist Michelle Davis, the author of the petition, testified that, based on her investigation, it was contrary to XAF's best interests to remain in respondent-father's care. She recommended that XAF be removed from respondent-father's care because of IB's allegations of sexual abuse. Davis did not ask XAF whether he wanted to continue visits with respondent-father and no allegations against respondent-father involved XAF. Davis nevertheless recommended that the trial court suspend visits between the two. The referee found no evidence supporting suspension of parenting time, so he indicated that he would recommend that the trial court deny that request. The referee found, however, that it was contrary to XAF's welfare to remain in respondent-father's care, citing IB's allegations of sexual abuse. The trial court authorized the petition and ordered supervised parenting time for respondent-father with XAF.

A family court referee, whose findings and recommendations were later adopted by the trial court, held a two-day termination hearing in June 2022. Respondent-father, XAF, and XAF's mother did not testify at either hearing. At the first hearing, IB testified that respondent-father sexually abused her on over 20 occasions. She indicated that she did not tell anyone about the

abuse because she was afraid respondent-father would harm her, her mother, or other loved ones. Davis also testified, discussing her interview with respondent-father and his denial of the abuse, as well as her questions to him about IB's positive STD test. Davis further testified about respondent-father's previous CPS contacts involving unsubstantiated claims of sexual abuse. Davis ultimately recommended that the trial court terminate respondent-father's rights to XAF, despite the lack of any evidence that respondent-father ever harmed XAF. She believed that if he posed a risk of harm to one child, he posed a risk of harm to the other, regardless of gender. Davis also acknowledged that, at the time of the hearing, XAF was as old as IB was when respondent-father first started abusing her.

On the second day of the termination hearing, Dr. Dena Nazer, M.D., Medical Director at Kids-TALK, testified about her medical examination of IB. She found IB's injuries to be consistent with sexual abuse. Family Assessment Services' forensic family clinician Robert Geiger, Ph.D., conducted a best interest clinic review, interviewing respondent-father and "servicing staff" to determine the possibility and advisability of reunification between respondent-father and XAF. Dr. Geiger found that respondent-father tended to minimize IB's allegations and denied having abused her. He noted that respondent-father had a positive relationship with XAF, took pride in being a father, and that XAF gave no indication that he felt unsafe with respondent-father. Dr. Geiger did not know whether XAF ever witnessed anything inappropriate between IB and respondent-father. But he concluded that respondent-father's abuse of IB would strain the relationship between XAF and IB. Like Davis, Dr. Geiger ultimately recommended termination of respondent-father's parental rights as in XAF's best interests, even though termination would likely result in XAF experiencing "grief, sadness, and loss."

Based on the evidence of IB's sexual abuse, the trial court found that XAF came under its jurisdiction.[2] The court also found by clear and convincing evidence that statutory grounds for termination existed under MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*), and (k)(*ix*). It further found that a preponderance of the evidence supported a finding that termination was in XAF's best interests. The referee acknowledged that "there was no testimony or evidence presented that [XAF] was physically or sexually abused." She also appeared to acknowledge that ostensibly XAF and IB were differently situated because XAF is male and IB is female. Nonetheless, the referee relied on its understanding of XAF's inherent vulnerability as a child to conclude that he was at risk of future harm by respondent-father. Termination was in XAF's best interests, the trial court found, because of respondent-father's sexual abuse of IB, and that the risk of harm because of XAF's vulnerability outweighed the bond he shared with respondent-father. The trial court entered orders adopting the referee's findings and terminating respondent-father's parental rights and releasing XAF into his mother's custody. This appeal followed.

## II. STANDARDS OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of

---

[2] The family court referee presided over the preliminary hearing and termination hearing. Following the termination hearing, the referee made recommendations to the trial court which the trial court adopted.

parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). This Court reviews a trial court's decision regarding best interests for clear error. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (citation omitted). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks, citation, and brackets omitted). "Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *Id*. (quotation marks and citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (quotation marks and citation omitted). "Generally, whether child protective proceedings complied with a respondent's substantive and procedural due process rights is a question of law that this Court reviews de novo." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014).

### III. BEST INTERESTS

Respondent-father argues that the trial court clearly erred in finding that termination of his parental rights was in XAF's best interests. We agree.

In termination proceedings, the trial court must weigh all the evidence, within the entire record, to determine the children's best interests. See *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000); *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "The focus at the best-interest stage has always been on the child, not the parent." *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks, citation, and brackets omitted). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. The trial court must state on the record or in writing its findings of fact and conclusions of law regarding its best-interest determination. See MCL 712A.19b(1); MCR 3.977(I)(1).

An additional consideration, in certain circumstances, is the doctrine of anticipatory neglect. See *In re Mota*, 334 Mich App 300, 322-323; 964 NW2d 881 (2020). Under that doctrine, when a parent has raised a child's half-sibling as if the half-sibling were his own child, the parent's sexual abuse of that half-sibling is highly probative of how the parent may treat his biological child. See *id*. We have, however, cautioned against relying on the doctrine of anticipatory neglect when the child at issue—here, XAF—has not been abused and is not similarly situated to a sibling who was abused. See *In re LaFrance*, 306 Mich App 713, 730-732; 858 NW2d 143 (2014) (rejecting application of doctrine of anticipatory neglect in a case involving a respondent father's failure to recognize severe illness in newborn but there was no evidence of abuse or neglect, or similar medical infirmities, of the other three children). But see *In re Mota*, 334 Mich App at 319-320, 322-323 (concluding in a case involving abuse to a half-sister of the two young boys at issue that "there [was] nothing in the record to support [the] respondent's pseudo-psychological argument that he is not a danger to young boys—abuse is abuse.").

Here, the trial court provided a limited best-interest analysis. It appeared to find that termination was in XAF's best interests because of respondent-father's abuse of IB, and that the risk of harm due to XAF's "vulnerability outweighed the bond the child shared" with respondent-father.[3] The trial court did not, however, consider or weigh any other factor, including respondent-father's parenting ability, his visitation history with XAF, or XAF's need for permanency, stability, and finality. See *In re White*, 303 Mich App at 713-714. Its discussion of XAF's bond to respondent-father was also limited to a conclusory finding that their bond did not outweigh the risk of harm; there is no discussion of the evidence the trial court relied on to determine that the pair had a bond to begin with.[4]

To be sure, respondent-father's sexual abuse of IB was a critical consideration in determining whether termination was in XAF's best interests. See *In re Mota*, 334 Mich App at 322-323. But it should not have been the only consideration. See *In re White*, 303 Mich App at 713-714 (outlining the relevant factors trial courts should consider and discuss on the record for purposes of evaluating whether termination is in a child's best interests). See also *In re Richardson*, 329 Mich App 232, 253-254; 961 NW2d 499 (2019) ("[I]t is not the mere undesirable acts . . . of the parents alone that justifies the state in terminating parental rights; there must be some showing of harm or actual risk of harm to the child that results from the parents' acts."). This is not to say that whether XAF's "safety and well-being [can be] reasonably assured" in respondent-father's care cannot outweigh the other factors, see, e.g., *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011); only that the trial court's best-interest analysis should weigh all the available evidence, *In re Trejo*, 462 Mich at 364. The trial court did not do that here, which was error.[5]

Further, such balancing of anticipated harm needed to be tied to XAF. See *In re RJK*, 501 Mich 867; 901 NW2d 398 (2017) (order remanding to the trial court for an individualized best interest determination, where the trial court failed to articulate whether its "generalized concerns" regarding the lack of permanency and stability for younger children placed with a guardian were present for the child at issue in the case).[6] Instead of analyzing how IB and XAF might be similarly

---

[3] The trial court also referenced the unsubstantiated, prior CPS allegations and investigations that included alleged sexual abuse. The court may not rely on unproven allegations as a basis to terminate parental rights. See *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334-335; 985 NW2d 912 (2022).

[4] To the extent the trial court relied on Dr. Geiger's opinion that respondent-father's abuse of IB may at some point in the future cause a rift between IB and XAF, this was improper. Termination of parental rights requires more than a speculative opinion about what *may* happen in the future. See, e.g., *In re Richardson*, 329 Mich App 232, 255; 961 NW2d 499 (2019), quoting *In re LaFrance*, 306 Mich App at 732.

[5] In light of our conclusion, we need not address respondent-father's other arguments.

[6] "An order that is a final Supreme Court disposition of an application and that contains a concise statement of the applicable facts and reasons for the decision is binding precedent." *Steele v Winfield*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357935); slip op at 4. *In*

situated despite ostensible differences (i.e., XAF was respondent's biological son, while IB was not related by blood and female), the court relied only on its perception of XAF's inherent vulnerability as a child. This too was error.

## IV. CONCLUSION

For the reasons stated above, we reverse and remand for further proceedings consistent with this opinion. We note that under the version of MCL 712A.13a(1)(j) in effect at the time of the termination hearing, biological mother was not included in the definition of "relative." See 2016 PA 191. Our Legislature has since amended that definition. See 2022 PA 200. On remand, if MDHHS files a new or amended petition, the court will be bound by the new definition, and should consider relative placement. See *In re Olive/Metts Minors*, 297 Mich App 35, 44; 823 NW2d 144 (2012) (requiring trial courts to explicitly address a child's placement with relatives and indicating that failure to do so constitutes clear error).

We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

---

*re RJK*, 501 Mich 867, was "a final Supreme Court disposition of an application." It contained "a concise statement of the applicable facts"—that the trial court erred in its best-interest findings when terminating the respondent's parental rights to the child at issue. The order also explained the "reasons for the decision"—the trial court failed to explain whether its "generalized concerns regarding the lack of permanency and stability for young children placed with a guardian [were] present for *this* child" and, on remand, should consider whether termination was in the youngest child's best interests "without regarding to a generalized policy disfavoring guardianship for children under the age of 14." *In re RJK*, therefore, meets the requirements to be precedentially binding on this Court.